

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BRANDON WELCH, a single man, | ) | No. 76771-2-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| ROGER R. BOARDMAN, a single man, | ) | |
| Defendant, | ) | |
| and | ) | UNPUBLISHED OPINION |
| CITY OF BURLINGTON, a municipal corporation, | ) | FILED: October 22, 2018 |
| Petitioner. | ) | |

SMITH, J. — The city of Burlington (City) seeks discretionary review of the trial court's order denying its motion for summary judgment and holding that the City was properly served. Because Brandon Welch did not serve the mayor, the city clerk, or the mayor's designated agent for acceptance of service, as required by RCW 4.28.080(2), the trial court erred in denying the City's motion for summary judgment. On appeal, Welch presents several alternative legal theories of personal jurisdiction on which we can affirm the trial court's order denying summary judgment, including the discovery rule, waiver and estoppel, and the tolling of the statute of limitations. But, Welch is not able to establish

personal jurisdiction on any of these bases. Therefore, we reverse and direct the trial court to enter summary judgment in favor of the City.

FACTS

On August 15, 2013, Welch's motorcycle collided with Roger Boardman's car in an intersection in the city of Burlington. In September 2013, Welch sued Boardman for negligence. In November 2013, the trial court granted partial summary judgment against Boardman on the issue of liability.

According to a declaration filed by Welch's attorney, in July or August 2015, the attorney e-mailed both an amended complaint and a proposed agreed order to amend the complaint to Boardman's attorney. The amended complaint alleged that the City negligently designed and maintained the intersection where the accident occurred. Boardman's attorney mailed the proposed order with his signature to Welch's attorney and Welch's attorney then secured an order from the court allowing the amended complaint to be filed. The amended complaint was filed with the court on August 26, 2015.

On August 31, 2015, Welch served the summons and amended complaint on the city administrator. The City filed an answer on October 29, 2015, stating, "Plaintiff has failed to properly serve the Summons and Complaint upon Defendant City as required by the laws of the State of Washington and therefore the court has no jurisdiction over the City." Clerk's Papers at 80.

On January 18, 2017, the City moved for summary judgment, arguing that Welch failed to properly serve the mayor or the city clerk, as required by statute, within the statute of limitations. On January 24, 2017, Welch served the mayor

with the summons and amended complaint at his home address. Welch served the city clerk with the summons and amended complaint on February 1, 2017.

In opposition to the City's motion for summary judgment, Welch argued that summary judgment was not proper for several reasons. First, he argued that the statute of limitations was tolled by RCW 4.16.170. Second, he argued that the statute of limitations did not expire because his cause of action against the City did not accrue until April 2014, when he learned of the negligent design of the intersection. Third, he argued that he complied with RCW 4.28.080(2) because the city administrator was designated by the mayor and the city council to accept "complaints" under Burlington Municipal Code (BMC) 2.08.030. Fourth, he argued that the City was estopped from asserting insufficiency of service because the city administrator accepted service in this case and previous cases without objection. Finally, he argued that the City waived any objection to service of process because it engaged in discovery before moving for summary judgment.

The trial court denied the City's motion for summary judgment because "service on the city was effectuated when the city administrator was served." Id. at 491. The court also held that "there [was] no waiver or estoppel arising from the City's actions in such prior cases, as the City alleged insufficiency of service in its answer in this matter." Id. The trial court denied the City's motion for reconsideration. It then certified the issue of sufficient service of process as reviewable under RAP 2.3(b)(4). We granted discretionary review.

ANALYSIS

*Mayor's Designated Agent for Service of Summons*

The City argues that the trial court erred in denying its motion for summary judgment because the BMC 2.08.030 does not designate the city administrator as the mayor's agent. We agree and hold that service on the city administrator cannot be the basis for personal jurisdiction over the City.

The construction of a city ordinance is a question of law reviewed de novo. Seattle Hous. Auth. v. City of Seattle, 3 Wn. App. 2d 532, 538, 416 P.3d 1280 (2018) (citing Sleasman v. City of Lacey, 159 Wn.2d 639, 642-43, 151 P.3d 990 (2007)). "'The same rules of statutory construction apply to the interpretation of municipal ordinances as to the interpretation of state statutes.'" Id. (quoting City of Seattle v. Green, 51 Wn.2d 871, 874, 322 P.2d 842 (1958)). In interpreting a statute, this court's fundamental objective is to ascertain and carry out the legislature's intent. Manary v. Anderson, 176 Wn.2d 342, 350-51, 292 P.3d 96 (2013) (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). "Statutory interpretation begins with a statute's plain meaning." Id. at 352. The plain meaning "is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." State v. Engel, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). The court may use a dictionary to discern the plain meaning of an undefined statutory term. Nissen v. Pierce County, 183 Wn.2d 863, 881, 357 P.3d 45 (2015) (citing HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009)). In determining

the plain meaning of a statute, the court "must not add words where the legislature has chosen not to include them." Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003). If the statute is unambiguous, the court's inquiry is at an end. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

RCW 4.28.080 provides the method for serving an incorporated city:

> Service made in the modes provided in this section is personal service. The summons shall be served by delivering a copy thereof, as follows:
>
> . . . .
>
> (2) If against any town or incorporated city in the state, to the mayor, city manager, or, during normal office hours, to the mayor's or city manager's designated agent or the city clerk thereof.

"When a statute designates a particular person or officer upon whom service of process is to be made in an action against a municipality, no other person or officer may be substituted." Meadowdale Neigh. Comm. v. City of Edmonds, 27 Wn. App. 261, 264, 616 P.2d 1257 (1980) (citing 56 AM. JUR. 2D Municipal Corporations, Counties, and Other Political Subdivisions § 854 (1971); 64 C.J.S. Municipal Corporations § 2205(c)(3) (1950)).

The City does not have a city manager, so under this statute, a party must serve either the mayor or, during normal office hours, the mayor's designated agent or the city clerk. The mayor testified that he had "not delegated the authority to receive service of process on behalf of the City of Burlington to any City official not specified in RCW 4.28.080(2)."[1] Clerk's Papers at 121-22. Here,

---

[1] Welch moved to strike this declaration and other citations in the City's opening brief. Because he did not object to the admission of the mayor's declaration on summary judgment, we deny his motion to strike it on appeal.

Welch served the city administrator on August 31, 2015. But he did not serve the mayor or the city clerk until January 2017, after the statute of limitations expired.

On summary judgment, Welch argued that the city administrator is the mayor's designated agent under BMC 2.08.030, which states:

> It shall be the responsibility and duty of the administrator to:
> . . . .
> C. Assist the mayor in day-to-day operations which shall include the handling of *complaints* and talking with the public.
> . . . .
> M. Investigate and make recommendations to the city council and mayor on all *complaints* referred to him/her and or received by him/her concerning city business.

(Emphasis added.) The trial court interpreted the term "complaints" in section C above to include a complaint in the legal sense:

> Under the handling of complaints I would think that a complaint is a complaint. And that the city administrator handles complaints. And he can be the guy you hand the complaint to. And when you do you've served the City of Burlington.

Report of Proceedings (Feb. 16, 2017) at 26.

Here, there are no genuine issues of material fact. The issue is legal: whether BMC 2.08.030 designates the city administrator as the mayor's agent for accepting a summons under RCW 4.28.080(2). We hold that it does not.

---

Bonneville v. Pierce County, 148 Wn. App. 500, 509, 202 P.3d 309 (2008) ("If a party fails to object or bring a motion to strike deficiencies in affidavits or other documents in support of a motion for summary judgment, the party waives any defects.") (citing Smith v. Showalter, 47 Wn. App. 245, 248, 734 P.2d 928 (1987)). We also deny Welch's motion to strike the City's citations to an unpublished case and the City of Kirkland's code because the unpublished case was properly cited and the code is not evidence, but law. See Ellis v. City of Seattle, 142 Wn.2d 450, 460 n.3, 13 P.3d 1065 (2000) (holding that a fire code provision cited in an appellate brief but not raised to the trial court could be considered because it "is not evidence; it is law").

6

BMC 2.08.030 does not include any reference to "service," "summons," or "designated agent"—the key terms in RCW 4.28.080(2). The only term that it includes is "complaints," which is not used in RCW 4.28.080(2). "Complaint" is not defined in Title 2 of the BMC. But BMC 1.04.030 explains how words in the code should be interpreted:

> All words or phrases shall be construed according to the common and approved usage of the language, but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning.

"Complaint" can have a technical meaning within the law, and its dictionary definition includes that meaning:

> **1 a** *obs* : a cry or loud utterance or series of utterances of pain, rage, or sorrow : grieved or sorrowful outcry **b** : a formerly popular poem that laments or protests unrequited love or tells of personal misfortune, misery, or injustice **c** : the act or action of expressing protest, censure, or resentment : expression of injustice . . . **d** : *formal allegation or charge against a party made or presented to the appropriate court or officer (as for a wrong done or a crime committed) and variously applied (as to the initial bill in proceedings in equity, the declaration in a common-law pleading, the statement of claim under the English practice acts, and the initial pleading under the code practice in various states of the U.S.)* **2 a** : something that is the cause or subject of protest or grieved outcry . . . **b** : an ailment or disease of the body.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 464 (2002) (emphasis added). But where the code acknowledges that it will interpret technical terms based on their peculiar meaning, it is important that BMC 2.08.030 does not use the technical terms of "summons," "designated agent" or "service of process." Use of the word "complaint" alone does not convey a particular technical meaning such that the city administrator may accept service of summons on

7

behalf of the mayor as his designated agent. In fact, the code only states that the city administrator may "handl[e]," "[i]nvestigate," and "mak[e] recommendations" regarding "complaints." BMC 2.08.030. None of these terms are the plain language equivalent of being the mayor's designated agent for acceptance of service of process on his behalf. Therefore, based on its plain language, BMC 2.08.030 does not designate the city administrator as the mayor's agent for purposes of accepting a summons. We hold that service on the city administrator did not effect personal jurisdiction on the City and that the trial court erred in holding that it did.

Welch argues that the term "city manager" in RCW 4.28.080(2) is ambiguous because it is not defined in the statute and, therefore, it could mean "city administrator." He bases this argument on the fact that the term is not capitalized, but he fails to cite any legal authority supporting this interpretation. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments that are not supported by any citation to authority need not be considered) (citing RAP 10.3(a)(5); McKee v. Am. Home Prods. Corp., 113 Wn.2d 701, 705, 782 P.2d 1045 (1989)). But, the plain language of RCW 4.28.080(2) says service must be on the "mayor," the "city manager," or the "city clerk." This language is not ambiguous, and we hold that it cannot be interpreted to include the "city administrator."

Welch argues that an alternative form of service is acceptable under RCW 4.28.080(2) because the City is run by part-time officials. He relies on Skinner v. Civil Service Commission of City of Medina, 168 Wn.2d 845, 853, 232

P.3d 558 (2010). But <u>Skinner</u> is distinguishable. In that case, the issue was whether or not Skinner properly served the City of Medina Civil Service Commission with the notice of an appeal under RCW 41.12.090, which states:

> Such appeal shall be taken *by serving the commission,* within thirty days after the entry of such judgment or order, a written notice of appeal, stating the grounds thereof, and demanding that a certified transcript of the record and of all papers on file in the office of the commission affecting or relating to such judgment or order, be filed by the commission with such court.

(Emphasis added.) The Supreme Court determined that Skinner substantially complied with this statute by leaving copies of the notice of appeal with the city clerk. <u>Id.</u> at 856. It held that "where the Commission's office address (at which a notice of appeal must be served) contains no office or Commission staff and the municipality is relatively small, . . . Skinner's service on the city clerk, located at that address, was reasonably calculated to give notice to the Commission." <u>Id.</u>

Here, the statute at issue is RCW 4.28.080(2), not RCW 41.12.090. In <u>Meadowdale</u>, this court explicitly held that substantial compliance is not enough to satisfy RCW 4.28.080(2). <u>Meadowdale</u>, 27 Wn. App. at 264 ("When a statute designates a particular person or officer upon whom service of process is to be made in an action against a municipality, no other person or officer may be substituted.") (citing 56 Am. Jur. 2d <u>Municipal Corporations, Counties, and Other Political Subdivisions</u> § 854 (1971); 64 C.J.S. <u>Municipal Corporations</u> § 2205(c)(3) (1950)). "[T]he doctrine of substantial compliance is inapplicable when the issue is whether service of process has been valid so as to subject a municipality to the court's jurisdiction." <u>Id.</u>

9

Furthermore, the Supreme Court distinguished RCW 4.28.080(2) from another service statute, RCW 10.95.040, in State v. Clark, 129 Wn.2d 805, 920 P.2d 187 (1996). That case involved service of a death penalty notice. Id. at 810. The defendant argued that personal service under RCW 4.28.080 was required, but the Supreme Court disagreed. Id. at 813. It distinguished cases involving that statute, including Meadowdale, and held that because RCW 10.95.040 did not require "personal" service and because RCW 4.28.080 applied to service of original process, those cases were not persuasive. Id. at 813-14.

The same reasoning can be used to distinguish Skinner from this case. RCW 41.12.090, the statute at issue in Skinner, does not require personal service, and it does not apply to service of original process. Therefore, the Supreme Court's holding in Skinner is not binding on this court's application of RCW 4.28.080(2).

In its amicus curiae brief, the Washington State Association of Municipal Attorneys argues that RCW 4.28.080(2) should be interpreted to allow only the mayor and not the city council to designate an agent who can accept service of summons on the mayor's behalf. Under this argument, the council, in passing BMC 2.08.030, did not have the authority to designate the city administrator as the mayor's agent. Because we hold that the plain language of BMC 2.08.030 does not designate the city administrator as the mayor's agent for accepting service of a summons, we need not reach this argument.

10

In conclusion, Welch did not obtain personal jurisdiction over the City within the statute of limitations by serving the city administrator rather than the mayor or the city clerk, as required by RCW 4.282.080(2). The trial court erred in concluding that BMC 2.08.030 designated the city administrator as the mayor's agent for acceptance of a summons, and remand is necessary.

## The Discovery Rule

Welch argues that he served the mayor and the city clerk within the statute of limitations because his negligence claim against the City did not accrue until he discovered defects in the road design through an expert's report. We disagree.

"'The general rule in ordinary personal injury actions is that a cause of action accrues at the time the act or omission occurs.'" Funkhouser v. Wilson, 89 Wn. App. 644, 666, 950 P.2d 501 (1998) (quoting In re Estates of Hibbard, 118 Wn.2d 737, 744, 826 P.2d 690 (1992)), aff'd in part and remanded sub nom. C.J.C. v. Corp. of Catholic Bishop of Yakima, 138 Wn.2d 699, 985 P.2d 262 (1999). But, as an exception to this rule, the discovery rule can apply when a delay occurs between the time of an injury and the plaintiff's discovery of that injury. Giraud v. Quincy Farm & Chem., 102 Wn. App. 443, 449, 6 P.3d 104 (2000) (citing Crisman v. Crisman, 85 Wn. App. 15, 20, 931 P.2d 163 (1997)). The discovery rule tolls the date of accrual of the action "until the plaintiff knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim." Id. (citing Crisman, 85 Wn. App. at 20; Allen v. State, 118 Wn.2d 753, 758, 826 P.2d 200 (1992)). But, the discovery

rule is not based on a plaintiff's knowledge of the existence of a specific legal cause of action because that would effectively toll the statute of limitations until the injured person saw his attorney. Gevaart v. Metco Const., Inc., 111 Wn.2d 499, 502, 760 P.2d 348 (1988) (adopting the Court of Appeals' unpublished opinion, Gevaart v. Metco Constr., Inc., noted at 48 Wn. App. 1034 (1987), as its own).

Here, Welch received an expert report on April 25, 2014, indicating that the intersection where the accident occurred provided a line of sight that was below safety standards. Welch argues that his cause of action against the City did not accrue until he received this expert analysis. Under this theory, the statute of limitations in a negligence action could always be tolled until the plaintiff meets with an expert that advises a cause of action is available. On appeal, Welch cites no authority supporting such an extension of the statute of limitations in personal injury cases, and we decline to extend one here. See Cowiche Canyon Conservancy, 118 Wn.2d at 809 (arguments that are not supported by any citation of authority need not be considered) (citing RAP 10.3(a)(5)).

In response to the City's motion for summary judgment below, Welch cited 1000 Virginia Ltd. Partnership v. Vertecs Corp., 158 Wn.2d 566, 146 P.3d 423 (2006) for support of his discovery rule argument. But that case involved latent defects in a construction project that were not discovered within the statute of limitations for a breach of contract action. There, the issue was whether "application of the discovery rule in construction contract cases involving latent

defects that the plaintiff would be unable to detect at the time of breach is a logical and desirable expansion of the discovery rule." Id. at 578-79. That case is inapplicable in this context and is not a basis for extending the statute of limitations here. Welch's discovery rule argument fails.

### Equitable Estoppel

Welch argues that the City is estopped from arguing that it was not properly served because the city administrator accepted service of process in this case and in past cases. We disagree.

"The elements of estoppel are: (1) an act or admission by the first party that is inconsistent with a later assertion; (2) an act by another party in reliance upon the first party's act or assertion; and (3) an injury that would result to the relying party if the first party were not estopped from repudiating the original act." Davidheiser v. Pierce County, 92 Wn. App. 146, 153, 960 P.2d 998 (1998) (citing Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738, 743, 863 P.2d 535 (1993); Robinson v. City of Seattle, 119 Wn.2d 34, 82, 830 P.2d 318 (1992)). "The party asserting estoppel must show not only lack of knowledge of the facts, but also the absence of any convenient and available means of acquiring such knowledge." Id. (citing Chem. Bank v. Wash. Pub. Power Supply Sys., 102 Wn.2d 874, 905, 691 P.2d 524 (1984)).

Davidheiser is instructive here. In that case, the Court of Appeals considered whether Pierce County could be estopped from asserting insufficiency of service of process where an employee incorrectly told the plaintiff that the Risk Management Department could accept a summons and complaint. Id. at 152-53. Under RCW 4.28.080(1), service of summons could be made only

on the county auditor, the deputy auditor, or an agent designated by legislative authority, not the county's Risk Management Department. Id. at 150. Relying on Meadowdale, the court explained that service on anyone other than the individuals identified in the statute was insufficient because the statute was clear who should be served. Id. at 153-54. The court held that

> even if Davidheiser could have reasonably relied on the representation to serve the summons and complaint on the Risk Management Department, such reliance was no longer reasonable after the County served its answer asserting that service was improper. Because the defense was raised within the statute of limitations, Davidheiser could have properly served the County pursuant to RCW 4.28.080(1) within the statutory period.

Id. at 154-55.

Here, as in Davidheiser, RCW 4.28.080(2) clearly states that the mayor or the city clerk must be served and the City asserted in its answer that service was insufficient. Because Welch had notice of the City's defense before the statute of limitations expired, he could have properly served the City within the statutory period. Estoppel is not a basis for denying summary judgment.

Without any citation to legal authority, Welch argues that the City is estopped from raising the defense of insufficient service because it engaged in discovery on other issues before moving for summary judgment on the issue of service. He is mistaken. In French v. Gabriel, 116 Wn.2d 584, 594, 806 P.2d 1234 (1991), the Supreme Court held that once the defendant properly preserved his defense of insufficiency of process by pleading it in his answer, he did not waive it by proceeding with discovery on unrelated issues. Id. (citing Crouch v. Friedman, 51 Wn. App. 731, 734-35, 754 P.2d 1299 (1988)); see also

14

<u>Davidheiser</u>, 92 Wn. App. at 155-56. Therefore, the City did not waive the insufficient service defense by engaging in discovery on other issues.

Finally, Welch argues that the City is estopped from arguing that there was insufficient service of process because the city administrator was an apparent agent for the mayor and the mayor is bound by the city administrator's acceptance of service on his behalf. This argument is at odds with the plain language of RCW 4.28.080(2) and <u>Meadowdale</u>, as described above. Welch's attempt to reframe the issue under agency law does not require a different result and his waiver and estoppel arguments fail.

### Tolling of the Statute of Limitations

Welch argues that the City was properly served within the statute of limitations because the statute of limitations was tolled under RCW 4.16.170 when he e-mailed the amended complaint to Boardman's attorney prior to filing it with the court. We disagree.

This court reviews the sufficiency of service de novo. <u>Streeter-Dybdahl v. Nguyet Huynh</u>, 157 Wn. App. 408, 412, 236 P.3d 986 (2010). The plaintiff bears the burden of making a prima facie case of sufficient service of process. <u>Id.</u>

The statute of limitations for an action may be tolled under RCW 4.16.170.[2] Based on that statute, service on any one of multiple

---

[2] RCW 4.16.170 states:
> For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the

defendants tolls the statute of limitations against all the defendants. <u>Sidis v. Brodie/Dohrmann, Inc.</u>, 117 Wn.2d 325, 329, 815 P.2d 781 (1991).

CR 15(a) states that "[i]f a motion to amend is granted, the moving party shall thereafter file the amended pleading and, pursuant to rule 5, serve a copy thereof on all other parties." The Court of Appeals has interpreted CR 15 to require that the moving party serve the amended complaint on the opposing party *after* the court grants leave to amend. <u>Will v. Frontier Contractors, Inc.</u>, 121 Wn. App. 119, 127, 89 P.3d 242 (2004) (citing <u>Carter v. Church</u>, 791 F. Supp. 297, 298 (M.D. Ga. 1992); <u>Murray v. Archambo</u>, 132 F.3d 609, 612 (10th Cir. 1998)).

Here, the only evidence of service of the amended complaint on Boardman in this record comes from a declaration by Welch's attorney, which states:

> I then delivered the draft amended complaint to counsel for Mr. Boardman, who I provided with a proposed agreed order. To my recollection, counsel for Mr. Boardman mailed me the order with his signature. Following receipt of that document I secured an order from the court allowing the amended complaint to be filed. I then filed the amended complaint with the court, in August 2015.

Clerk's Papers at 303. This declaration states that Boardman's attorney was "provided" the draft amended complaint *before* the court granted leave to amend.

---

date of filing the complaint. If the action is commenced by service on one or more of the defendants or by publication, the plaintiff shall file the summons and complaint within ninety days from the date of service. If following service, the complaint is not so filed, or following filing, service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations.

But, there is no evidence in the record that Welch served the amended complaint on Boardman *after* it was filed, as required by CR 15(a). Even speculating that filing the amended complaint could toll the statute of limitations, Welch has the burden to show that the amended complaint was properly served on Boardman in order to effectuate tolling. He has not done so. Therefore, the tolling statute cannot be a basis for extending the statute of limitations until the City was properly served.

In conclusion, we reverse the trial court's order on summary judgment and direct the trial court to enter summary judgment in favor of the City.

WE CONCUR: